UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MARY CLARKSON BARKLEY, ) | |
| ) | CASE NO.: 2:21-cv-1727-DCN-MHC |
| Plaintiff, ) | |
| ) | COMPLAINT |
| vs. ) | |
| ) | |
| DIAMONDS DIRECT USA ) | |
| OF CHARLESTON, LLC, and ) | |
| DIAMONDS DIRECT USA, INC. ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

Comes now, Mary Clarkson Barkley (hereinafter referred to as "Plaintiff") and files this Complaint against Diamonds Direct USA of Charleston, LLC and Diamonds Direct USA, Inc. (hereinafter referred to collectively as "Diamonds Direct" or "Defendant") seeking to recover damages for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and as amended ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 631 et seq. and as amended ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 29 U.S.C. § 2000 et seq. ("Title VII") and for negligent misrepresentation.

1

## THE PARTIES

1. Mary Clarkson Barkley ("Plaintiff") is an adult citizen of Mount Pleasant, South Carolina. During all relevant times, Plaintiff was an "employee" within the meaning of the ADA, ADEA and Title VII.

2. Defendant Diamonds Direct USA of Charleston, LLC is a limited liability company organized under the laws of the State of South Carolina with its principal place of business at 1911 Highway 17 N, Mount Pleasant, South Carolina, 29464. During all relevant times to this action, Defendant was located and operating with fifteen or more employees. Defendant is an "employer" within the meaning of the ADA, ADEA and Title VII.

3. Defendant Diamonds Direct USA, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 4521 Sharon Road, Suite #101, Charlotte, North Carolina 28211-3445. During all relevant times to this action, Diamonds Direct USA, Inc. was the corporate headquarters for Diamonds Direct, and was located and operating with one hundred or more employees. Defendant is an "employer" within the meaning of the ADA, ADEA and Title VII.

4. From information and belief, Diamonds Direct USA, Inc. is the parent company for Diamonds Direct USA of Charleston, LLC. The operations of the two entities are interrelated. Indeed, employees of Diamonds Direct USA of Charleston, LLC reported to human resources at Diamonds Direct USA, Inc. The entities had

common ownership and financial control, common management and centralized human resources in personnel at Diamonds Direct USA, Inc. Thus, they were, at all relevant times, the single employer of Plaintiff.

## JURISDICTION AND VENUE

5. This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and as amended ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 631 et seq. and as amended ("ADEA"), and the Title VII of the Civil Rights Act of 1964, as amended, 29 U.S.C. § 2000 et seq. ("Title VII"). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331 because this is a civil action arising under the laws of the United States.

6. Venue is appropriate within this District because Defendant Diamonds Direct has its principal place of business there and because the causes of action alleged to have occurred in this Complaint occurred in this District and in this Division.

7. Plaintiff timely filed a Charge of Discrimination on or about August 1, 2019, with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination under the ADA, and for retaliation and age discrimination under Title VII and the ADEA. The State of South Carolina Human Affairs Commission issued a Right to Sue letter on or about March 22, 2021 (Case No. 3-19-240A/D/RET). The EEOC issued a Right to Sue letter on or about May 26, 2021 (Case No. 864-2019-

12325). Thus, Plaintiff has exhausted her administrative remedies under the ADA, ADEA and Title VII.

## RELEVANT FACTS

8. Plaintiff applied for Defendant's Full Time Diamond Expert position on LinkedIn on October 25, 2018. The posting was for a <u>permanent full-time salary</u> position that would include 401K benefits and health insurance.

9. Plaintiff interviewed with Defendant three separate times. In each interview, Plaintiff stated she would only be able to leave her previous full-time position with Adams Outdoor and part-time position with Roberto Coin if the position with Diamonds Direct was full-time, as she required full-time employment for her car lease and financial situation.

10. Plaintiff was hired and began to work as a Full Time Diamond Expert on approximately November 16, 2018.

11. The Diamond Expert position's duties included developing customer relationships, showing jewelry, setting up financing, and placing the orders.

12. Plaintiff was sent a new-hire packet for full-time employees from Diamonds Direct USA, Inc. and was enrolled in health insurance, dental insurance, vision insurance and the 401K program. The Diamond Expert position was also eligible for commission on jewelry sales. These programs were only available for full-

time employees. Plaintiff was also provided employee business cards provided exclusively for the full-time employees of Diamonds Direct.

13. On December 5, 2018, Plaintiff disclosed her disability of Stage 2 Breast Cancer to the General Manager, Ayelet Gilady, and requested a reasonable accommodation to move from full-time salary to full-time hourly. Plaintiff also requested that the disclosure remain confidential.

14. This accommodation request was reasonable because Plaintiff would require some time off for medical treatments for her breast cancer.

15. During the meeting where Plaintiff disclosed her diagnosis, Gilady suggested that Plaintiff resign to "take care of her health." Plaintiff declined and reiterated her request to work in a full-time hourly position.

16. On December 6, 2018, the day immediately following Plaintiff's disability disclosure, Gilady sent an email to Plaintiff about her new part-time schedule and training requirements.

17. Immediately following Plaintiff's request for accommodation, her hours were cut to part-time, and later further reduced to eight hours a week. This move to part-time hours disqualified her from health insurance or retirement benefits. Plaintiff was forced to use COBRA insurance after the loss of her healthcare benefits.

18. Plaintiff did not request part-time work and requested a reasonable accommodation to move from salary to hourly full-time work, which would not affect

5

the nature of her duties, or create an undue burden on the Defendant in the operation of their business.

19. Plaintiff spent that day at the MUSC discussing cancer treatment options and responded to the email in less than three minutes. She did not fully understand the nature of the email and drafted an additional response a few days later.

20. On December 10, 2018, Plaintiff responded to Gilady and clarified that she did not request to work part time, but instead made an accommodation request to move to full time hourly to accommodate her physician's appointments. Plaintiff reiterated her need to work full-time, and the discussions at the interview requiring a full-time position before she accepted the position.

21. Defendant refused to return Plaintiff to full-time hours and did not allow her to sell directly to the customers, thus making her ineligible for commission. Her hours were further reduced to eight hours a week. Instead of jewelry sales, Plaintiff was told to do distinctly different and lesser duties including restocking the refrigerator, cleaning the store glass, delivering drinks and breaking down boxes.

22. The General Manager told Plaintiff that "her cancer created negative energy" and would not allow Plaintiff to touch the jewelry or work while inventory was being stocked, because the "negative energy" would affect the jewelry. All other sales associates, front office staff and back office staff were allowed to touch the jewelry and show it to customers.

23. Plaintiff's coworkers also began making disparaging comments about her age and referring to her as the "old lady." Several coworkers suggested that her age affected her ability to see or use technology.

24. The normal sales training process took one to two months, and Plaintiff was not allowed to touch the diamonds or make any sales even after six months of advanced training.

25. Defendant claims that Plaintiff was not adequately trained, but would not allow Plaintiff to demonstrate her training in a Diamond presentation during any of the last five months of her employment.

26. Defendant also refused to allow Plaintiff to attend group sales rallies, meet vendors, attend mandatory Saturday morning brand trainings, or complete additional sales trainings during off-hours.

27. Defendant did not allow Plaintiff to eat lunch while she was at work, or to eat the catered meals delivered on Saturdays. The other sales associates, front office staff, back office staff, and even the off-duty police officers were allowed to eat lunch during their shifts and partake in the catered meals.

28. Defendant hired Shawna Lawry as a full-time Diamond Expert a week after Plaintiff was hired, and she was given normal training and allowed to retain her full-time position.

29. Plaintiff was again demoted in April 2019 to a Front Desk Hostess, with distinctly different and lesser duties, including letting customers in and out of the door, than the Full Time Diamond Expert position she accepted.

30. Defendant also disclosed Plaintiff's disability to other employees. A visiting corporate representative, one of the Vice Presidents of Diamonds Direct, was also aware of Plaintiff's disability. He told the Plaintiff he was so sorry about her illness and asked how she was doing. These disclosures caused Plaintiff embarrassment and shame, and made it difficult for her to seek other employment.

31. On June 20, 2019, Plaintiff resigned after being constructively discharged due to the denial of her accommodation request and Defendant's refusal to reinstate her full-time schedule and pay.

## FIRST CAUSE OF ACTION

**(Discrimination - Violation of the Americans with Disabilities Act ("ADA"))**

32. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

33. Plaintiff is a qualified individual within the meaning of 42 U.S.C. §12111(8) in that she had breast cancer, Diamonds Direct perceived her to have a disability, she had the requisite education and training to perform and can perform the essential functions of her job as a Diamond Expert, and did in fact hold that job.

34. Plaintiff suffered from an actual disability in that she had breast cancer, a physical condition which substantially limited several major life activities. 42 U.S.C. §12102.

35. Diamonds Direct is an "employer" within the meaning of 42 U.S.C. §12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C. §12111(5).

36. Plaintiff was an employee of Diamonds Direct within the meaning of 42 U.S.C. §12111(4).

37. Due to Plaintiff's actual disability, Diamonds Direct reduced Plaintiff's hours and restricted her from sales and commission opportunities. Specifically, Diamonds Direct's discriminatory actions included but were not limited to (1) limiting, segregating, or classifying Plaintiff in a way that adversely affected Plaintiff's opportunities or status because of Plaintiff's actual or perceived disability within the meaning of § 12112(b)(1); (2) utilizing different standards, criteria, or methods of administration in the sales training process that have the effect of discrimination on the basis of disability within the meaning of § 12112(b)(3)(A); (3) denying employment and training opportunities to Plaintiff based on the Defendant's need to make reasonable accommodations for her physical impairments within the

meaning of § 12112(b)(5)(A); (4) denying Plaintiff's reasonable accommodation request and not making reasonable accommodations for the known physical limitations of Plaintiff, an otherwise qualified individual with a disability who was an employee, despite the fact that doing so would not impose an undue hardship on the operation of the Defendant's business within the meaning of § 12112(b)(5)(A); and (5) by retaliating against Plaintiff after she made a reasonable accommodation request by changing the nature of her position and reducing her hours by more than half.

38.  This accommodation request was reasonable due to the need for medical treatments for Plaintiff's disability and would not cause an undue burden on Diamonds Direct.

39.  Plaintiff resigned after being constructively discharged due to the disparate treatment due to her disability, and intolerable working conditions.

40.  Plaintiff has been damaged by Diamonds Direct's violation of the ADA inasmuch as Plaintiff has been unable to use her education and training as a Diamond Expert, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress and mental pain and anguish.

41. Plaintiff is entitled to her attorney's fees and costs incurred in this matter pursuant to 42 U.S.C. §12205.

42.  Plaintiff is further entitled to any and all relief permitted under the ADA, 42 U.S.C. §12117(a) including equitable relief.

## SECOND CAUSE OF ACTION

### (Retaliation – Violation of the Americans with Disabilities Act ("ADA"))

43. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

44. Plaintiff is a qualified individual within the meaning of 42 U.S.C. §12111(8) and had the requisite education and training to perform and can perform the essential functions of her job as a Diamond Expert with Diamonds Direct, and did in fact hold that job.

45. Plaintiff suffered from an actual disability in that she had a physical condition which substantially limited several major life activities. 42 U.S.C. §12102.

46. Diamonds Direct is an "employer" within the meaning of 42 U.S.C. §12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C. §12111(5).

47. Plaintiff was an employee of Diamonds Direct within the meaning of 42 U.S.C. §12111(4).

48. Plaintiff engaged in a protected activity under the ADA by making a reasonable accommodation request. 42 U.S.C. § 12101 et seq.

49. This accommodation request was reasonable to accommodate the necessary medical treatments for Plaintiff's disability and would not require significant difficulty or expense on the part of Diamonds Direct, within the meaning of § 12112(b)(5)(A).

50. Plaintiff suffered an adverse employment action when Defendant denied her accommodation request and instead reduced her hours by more than half. Defendant also refused to allow Plaintiff to touch the jewelry or attend group sales rallies or trainings.

51. There was a causal connection between Plaintiff's accommodation request and the Defendant's adverse action. Plaintiff was hired for a permanent full-time position and had numerous discussions during the interview process about her need for full-time employment. Her hours were cut to part-time the day immediately following her accommodation request.

52. Defendant's retaliation and reduction of hours after Plaintiff engaged in the protected activity of an accommodation request was in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

53. Plaintiff has been damaged by Diamonds Direct's violation of the ADA inasmuch as Plaintiff has been unable to use her education and training as a Diamond Expert, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress and mental pain and anguish.

54. Plaintiff is entitled to her attorney's fees and costs incurred in this matter pursuant to 42 U.S.C. §12205.

55. Plaintiff is entitled to any and all relief permitted under the ADA, 42 U.S.C. §12117(a) including equitable relief.

## THIRD CAUSE OF ACTION

## (Discrimination – Violation of the Age Discrimination in Employment Act ("ADEA"))

56. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

57. Plaintiff is sixty-six years old and therefore is a qualified individual within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. §631. While Plaintiff was employed at Diamonds Direct, she was sixty-three years old.

58. Diamonds Direct is an "employer" within the meaning of 29 U.S.C. §630 in that it is engaged in an industry affecting commerce and has more than 20 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C. §12111(5).

59. Plaintiff was an employee of Diamonds Direct within the meaning of 29 U.S.C. §630.

60. Plaintiff had the requisite education and training to perform and can perform the essential functions of her job as a Diamond Expert with Diamonds Direct, and did in fact hold that job.

61. Plaintiff was targeted by Defendant and her coworkers and treated differently because of her age. 29 U.S.C §623.

62. Plaintiff was referred to as "the old lady" by other employees, which caused her shame and embarrassment.

63. Plaintiff was not allowed to sell merchandise or attend group sales rallies, trainings, or vendor meetings.

64. Plaintiff resigned after being constructively discharged due to the disparate treatment due to her age and disability.

65. Upon our information and belief, Plaintiff's role was filled by a new employee under 60 years of age.

66. Plaintiff has been damaged by Diamonds Direct's violation of the ADEA inasmuch as Plaintiff has been unable to use her education and training as a Diamond Expert, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress and mental pain and anguish.

67. Plaintiff is entitled to her attorney's fees and costs incurred in this matter.

68. Plaintiff is entitled to any and all relief permitted under the ADEA, 29 U.S.C. §263.

## FOURTH CAUSE OF ACTION

**(Hostile Work Environment and Constructive Discharge – Violation of Title VII)**

69. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

70. Diamonds Direct is an "employer" within the meaning of 42 U.S.C. §2000(e) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years.

71. Plaintiff was an employee of Diamonds Direct within the meaning of 42 U.S.C. §2000(e).

72. Plaintiff is a member of a protected class due to her gender, age, and disability status. Plaintiff is a sixty-six year old woman who suffered from an actual disability in that she had a diagnosis of breast cancer, a physical condition which substantially limited several major life activities. While Plaintiff was employed by Diamonds Direct, she was sixty-three years old.

73. Plaintiff engaged in a protected activity by making a reasonable accommodation request to move to full-time hourly, in order to accommodate her cancer treatment.

74. After Plaintiff made her accommodations request, Defendant demoted her to part-time hourly employment and forbid her from touching the jewelry, or attending vendor meetings, sales rallies, and other trainings.

75. Plaintiff was not allowed to be in the store while inventory was being stocked, or to touch any of the merchandise because Defendant believed her disability gave off "negative energy."

76. Plaintiff was constantly belittled by other staff members because of her age and disability, and the rules limiting her from touching or selling the jewelry.

77. Plaintiff resigned after being constructively discharged, due to the reduced working hours, continued harassment and intolerable working environment.

78. Plaintiff has been damaged by Diamonds Direct's violation of Title VII inasmuch as Plaintiff has been unable to use her education and training as a Diamond Expert, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress and mental pain and anguish.

79. Plaintiff is entitled to her attorney's fees and costs incurred in this matter.

80. Plaintiff is further entitled to any and all relief permitted under Title VII, 29 U.S.C. § 2000 et seq.

## FIFTH CAUSE OF ACTION

**(Negligent Misrepresentation)**

81. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

82. Diamonds Direct made false representations to Plaintiff about the nature of her position during her application and interview. Diamonds Direct represented that the position was a permanent full-time salary position with health insurance and retirement benefits.

83. Diamonds Direct had a pecuniary interest in misrepresenting the position to the Plaintiff, in order to induce her to leave both her full-time job with Adams Outdoor and part-time position with Roberto Coin and take the job with Diamonds Direct.

84. Diamonds Direct owed a duty of care to Plaintiff to see that it communicated truthful information to Plaintiff in enticing her to leave her positions with Adams Outdoor and Roberto Coin and to take the job with Diamonds Direct.

85. Diamonds Direct breached that duty by failing to exercise due care to ensure the representation made to Plaintiff was accurate and changing the nature of Plaintiff's employment to a part-time hourly position.

86. Plaintiff relied on Diamonds Direct's misrepresentation regarding the full-time position and resigned from her two previous positions in order to accept the new full-time position with Diamonds Direct.

87. Plaintiff suffered economic losses as a result of Diamonds Direct's misrepresentation and her demotion to a part-time hourly position.

88. Plaintiff has suffered emotional distress as a result of Diamonds Direct's misrepresentation.

**WHEREFORE**, Plaintiff Mary Clarkson Barkley prays for judgment against the Defendants Diamonds Direct USA of Charleston, LLC and Diamonds Direct USA, Inc. in a just and equitable sum of actual, liquidated and punitive damages, for the costs of this action including attorney's fees, and for such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

BRETT M. EHMAN
Attorney at Law

June 10, 2021
/s/ Brett M. Ehman_____
Brett M. Ehman
Fed. Id. No. 12844
S.C. Bar No.: 102443
Attorney for Plaintiff
2971 West Montague Avenue
Suite 203
North Charleston, SC  29418
(843) 225-3607
brett@ehmanlaw.com